## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO
#### Honorable Sidney B. Brooks

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOHN P. MCGEHAN | ) | Bankruptcy Case No. 12-27662-SBB |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| MICHAEL ANTHONY MILANO and, | ) | Bankruptcy Case No. 12-30027-SBB |
| RASHEL MONIQUE MILANO | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

**APPEARANCES:**

William R. Lambert, Esq.
P.O. Box 1169
Denver, CO  80201
COUNSEL FOR CHAPTER 13 TRUSTEE,
SALLY ZEMAN

Kevin D. Heupel, Esq.
Elizabeth A. Cocat, Esq.
Heupel Law, P.C.
2440 Stout St.
Denver, CO  80205
COUNSEL FOR DEBTOR, JOHN MCGEHAN

Michael J. Wink, Esq.
Wink and Wink, P.C.
11101 W. 120th Ave., Suite 230
Broomfield, CO 80021
COUNSEL FOR DEBTORS, MICHAEL AND
RASHEL MILANO

---

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

---

These two Chapter 13 confirmation matters come before the Court on the Chapter 13 Trustee's objections to confirmation based on allegations of a lack of good faith. The Court has joined these two proceedings for the purposes of issuing an opinion in the Chapter 13 cases of John P. McGehan ("McGehan") and Michael Anthony Milano and Rashel Monique Milano ("Milanos")(collectively, the "Debtors") because of similarities in their factual backgrounds and identical nature of the legal issues involved.

Both matters are before the Court on the Trustee's Objection to Confirmation for Lack of Good Faith and the Debtors' respective Responses. In each of their respective cases, the Debtors propose Chapter 13 plans which would pay 100% of all unsecured claims over a five-year commitment period. The Trustee has filed an objection to confirmation in both matters because, based on their reported disposable monthly income, the Debtors could easily pay all unsecured claims in full in a substantially shorter period of time than they have proposed in their plans. For this reason, the Trustee argues the Debtors have not proposed their Chapter 13 plans in good faith.

For the reasons stated herein, the Court finds that, under applicable law, the Debtors have proposed their Chapter 13 plans in good faith and the Court confirms both plans.

While the Court recognizes that five-year plans, such as those proposed by the Debtors, delay recovery by the creditors and tend to increase the risk of loss if the Debtors fail to complete their respective plans, for whatever reason, Congress did not prescribe or require better treatment of creditors in the form of more prompt or timely repayment. Indeed, Congress seems to have statutorily approved five-year plans, such as the Debtors', where creditors are paid in a substantially longer and delayed time-frame over what the debtor could otherwise afford to pay, as being proposed in good faith.

## I.   JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## II.   FACTS

The material facts in both cases are not in dispute and the central issues in both cases are the same: the Debtors' commitment periods and proposed monthly payments.

### A. Applicable Commitment Period

In both cases, the Debtors are classified as above median income debtors because they reported household income which exceeds the median household income for similarly sized households in the state of Colorado. Specifically, McGehan reported that the annual income of his two person household is $192,609.12, which is nearly triple the median income of $64,402.00 for a similarly sized household in Colorado. Likewise, the Milanos reported that the annual income of their three person household is $174,703.08, which is well over twice the

2

median income of $71,438.00 for a Colorado household of three. Therefore, under the means test of 11 U.S.C § 1325(b)(4), the Debtors may select five-year repayment plans and have elected to do so.[1]

## B. Proposed Plan Payment

On his Schedule I, McGehan reports gross monthly income of $16,050.76 and after payroll deductions, an average monthly income of $10,683.84. On his Schedule J, McGehan reports monthly expenses totaling $6,028.90 and a monthly net income of $4,654.94. From his monthly net income, McGehan has proposed to pay only $1,090.29 – 23% of his net monthly income – to his creditors each month over five years. Although McGehan's proposed payments constitute a paltry percentage of his net monthly income and he unquestionably has the ability to propose a feasible plan with larger monthly payments, McGehan's plan, as presently proposed, would pay all unsecured claims in full.

Likewise, the Milanos have proposed a plan with a similar but less egregious disparity between their net monthly income and proposed plan payments. On their Schedule I, the Milanos report gross monthly income of $13,914.18 and after payroll deductions, an average monthly income of $10,572.38. On their Schedule J, the Milanos report monthly expenses totaling $7,230.61 and a monthly net income of $3,341.77. From their monthly net income, the Milanos have proposed to pay only $1,722.07 – 51% of their monthly net income – to their creditors each month over five years. Like McGehan's proposed plan, the Milanos' proposed plan would pay all unsecured claims in full.

Both of the Debtors' proposed plans comply with § 1325(b)(1), which is commonly referred to as the "ability to pay test."[2]

The Trustee's objections arise because the Debtors have proposed to pay 100% of all unsecured claims in five years when, if the Debtors committed all of their reported disposable income to plan payments, the Debtors could complete the same task in less than three years. The Milanos could pay all of their unsecured claims in 31 months and McGehan could pay all of his unsecured claims in 15 months. Thus, the issue, which underlies the Trustee's objections and is before the Court, is whether the Debtors have proposed their plans in good faith when they propose to pay in five years what they could easily pay in less than three years.

---

[1] 11 U.S.C. § 1325(b)(4) (hereinafter, unless otherwise stated, all statutory references shall be to Title 11 of the Unites States Code); The Court also notes that Official Form B22C, which debtors use to calculate their current monthly income, applicable commitment period, and disposable income, directs above median debtors on line 17 to indicate that their "applicable commitment period is 5 years."

[2] *See Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987).

## III.   DISCUSSION

### A.   Good Faith under § 1325(a)(3)

Section 1325 governs confirmation of Chapter 13 plans.  Under § 1325(a), the Court must confirm debtors' plans if, among other things, the debtors have proposed their plans in good faith and not by any means forbidden by law.[3]  In the Tenth Circuit, courts reject applying per se rules to determine good faith in favor of evaluating the totality of debtors' circumstances.[4]  To aid in this analysis, courts weigh a number of non-exhaustive factors, first articulated by the Eighth Circuit in *United States v. Estus (In re Estus)*[5] and soon thereafter adopted by the Tenth Circuit in *Flygare v. Boulden.*[6]  Those factors which evidence debtors' good faith or lack thereof include:

1.   the amount of proposed payments and the amount of the debtor's surplus;
2.   the debtor's employment history, ability to earn and likelihood of future increases in income;
3.   the probable or expected duration of the plan;
4.   the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
5.   the extent of preferential treatment between classes or creditors;
6.   the extent to which secured claims are modified;
7.   the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
8.   the existence of special circumstances such as inordinate medical expenses;
9.   the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
10.   the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

---

[3]   11 U.S.C. § 1325(a)(3).

[4]   *Flygare v. Boulden*, 709 F.2d 1344, 1347-48 (10th Cir. 1983).

[5]   *In re Estus*, 695 F.2d 311, 317 (8th Cir. 1982).

[6]   *Flygare*, 709 F.2d at 1347-48.

11.  the burden which the plan's administration would place upon the trustee.[7]

A year after the Tenth Circuit's adoption of the *Estus* factors in *Flygare*, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 which amended the Bankruptcy Code to include the "ability to pay" test of § 1325(b)(1).[8]  Under § 1325(b)(1), a court may confirm a plan over the objection of the trustee if the debtors pay all unsecured claims in full or the debtors commit all of their projected disposable income received during the applicable commitment period to pay unsecured creditors.[9]

Following this 1984 amendment to the Code, the Eight Circuit revisited the *Estus* factors in *Educ. Assistance Corp. v. Zellner*.  In *Zellner*, the Eight Circuit reasoned that § 1325(b)(1)'s "'ability to pay' criteria subsumes most of the *Estus* factors" and, therefore, the good faith inquiry now "has a more narrow focus."[10]  Under this more narrow focus, courts "must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."[11]

At the hearing on the Trustee's objections, attorneys for the Debtors and the Trustee disagreed on whether the "more narrow focus" applied by the Eight Circuit over the past 25 years applies here in the Tenth Circuit.  The Court determines that it does.  On many occasions, courts in the Tenth Circuit have reviewed bankruptcy court opinions on good faith in the Chapter 13 context.  After reviewing these cases, it is clear to the Court that the "more narrow focus" applies here, especially since the focus of the Trustee's objections are exclusively on the Debtors' ability to pay – an issue which is specifically addressed by § 1325(b)(1).[12]  Thus, the

---

[7]  *Id.*

[8]  *See Zellner*, 827 F.2d at 1227.

[9]  11 U.S.C. § 1325(b)(1).

[10]  *Zellner*, 827 F.2d at 1227.

[11]  *Id.*

[12]  *In re Cranmer*, 697 F.3d 1314, 1319 n.5 (10th Cir. 2012) (recognizing the "more narrow focus" of a good faith analysis); *In re Robinson*, 987 F.2d 665, 668 n.7 (10th Cir. 1993) (noting that in a previous decision, the court recognized that § 1325(b) changed the good faith analysis);  *In re Thompson*, 116 B.R. 794, 796 (D.Colo. 1990) (reasoning that inclusion of § 1325(b) has narrowed good faith analysis to "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentations to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.");  *In re Gemelli*, 2011 WL 2292203, *6 n.3 (D.Colo June 8, 2011) (applying a narrow approach and reasoning that since the Tenth Circuit adopted the good faith factors set forth by the Eighth Circuit in *Estus*, the Eighth Circuit's analysis of § 1325(b) on its good faith factors "applies with equal weight" to the *Flygare* factors).

Court applies the more narrow test and analyzes the Trustee's argument in an effort to find whether the Debtors have stated their debts and expenses accurately; made any fraudulent misrepresentation to mislead the bankruptcy court; or have unfairly manipulated the Bankruptcy Code.[13]

### B. The Parties' Arguments and the Court's Analysis

The Trustee's objections are based upon what she feels is an inequitably slow distribution to creditors. Although the Debtors propose to pay 100% of unsecured claims over five years, the Trustee argues the same level of repayment could be accomplished in under three years. Indeed, if the Debtors committed all of their monthly net income to plan payments, the Milanos could pay their creditors 100% and complete their plan in 31 months (about half the selected time) and McGehan could pay his creditors 100% and complete his plan in 15 months (about one-quarter the selected time). In both cases, the Trustee asserts there is no reason why unsecured creditors should have to wait five years to be paid in full when the Debtors have the ability to pay all claims in a substantially shorter period of time. According to the Trustee, the proposed plans shift the risk of default inequitably to the creditor, and the effect of confirmation would be to grant the Debtors an interest free loan for five years. The Trustee urges the Court to deny confirmation of the Debtors' plans, thus signaling to the Debtors that they must propose plans which provide for faster repayment lest they be denied confirmation again.

In support of her objections, the Trustee contends that, of the eleven non-exclusive *Flygare* factors, the first, second, third, eighth, and tenth support a lack of good faith claim. The Trustee does not allege that the Debtors misstated or otherwise concealed their debts, income, or expenses, nor does the Trustee contend that the Debtors made fraudulent misrepresentations to mislead the Court. However, the Trustee does appear to argue that these five factors demonstrate that the Debtors are unfairly manipulating the Bankruptcy Code by paying less per month than they are comfortably able to pay and significantly less than their reported projected disposable income.[14]

While the Trustee argues that five of the eleven factors favor denying confirmation for unfair manipulation, the Court finds that the amount of the Debtors' proposed payments is the

---

[13]     While *Zellner* discusses the narrowing of the *Estus* factors in the context of §1325(b), the Court notes that other amendments to the Code also contributed to narrowing the *Estus* factors. For example, the Bankruptcy Amendments and Federal Judgeship Act of 1984 also amended the Code to include § 109(f) [now g] which, to a certain degree, serves to prohibit repetitive bankruptcy filings. The amendment to § 109 limits the applicability of the ninth *Estus* factor. See *Matter of Smith*, 848 F.2d 813, 819 (7th Cir. 1988).

[14]     The Court is mindful of the sound and sensible approach by the Trustee in this objection, in terms of what is arguably more fair and equitable to creditors. However, "sound and sensible" is not the established legal test and simple fairness is not the statutory or case law standard. That would be a rather subjective and vague standard. The Court presumes that Congress knew what it was doing when it drafted the law and Congress crafted a more explicit and alternative approach.

fact which underlies all five of these factors and the amount of the Debtors' repayment, *standing alone*, is an insufficient basis for finding a lack of good faith under either the *Flygare* factor analysis or a narrow analysis.

As discussed above, enactment of the ability to pay test in § 1325(b)(1) narrowed the good faith analysis, subsuming most of the *Flygare* factors.[15] However, even before enactment of § 1325(b)(1), courts found that good faith under § 1325(a)(3) imposed no per se minimum level of repayment.[16] Enactment of § 1325(b)(1) closed the door on a substantial or meaningful repayment analysis. In § 1325(b)(1), Congress drew a bright line and determined that debtors can overcome objections to confirmation by committing all of their disposable income *or* paying all claims in full. There is no requirement that debtors do both. Here, the Debtors have complied with the second prong of § 1325(b)(1) by proposing to pay all claims in full.

Just as consideration of the amount of debtors' proposed payments has been narrowed by § 1325(b)(1), so too has consideration of the length of debtors' plans been narrowed by enactment of § 1325(b)(4) in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Under § 1325(b)(4), the applicable commitment period for above median debtors shall be "not less than 5 years."[17] Furthermore, the applicable commitment period *may* be shorter, "but *only if* the plan provides for payment in full of all allowed unsecured claims over a shorter period."[18]

As above median debtors, McGehan and the Milanos have proposed five year commitment periods and, thus, have done all that is *required* under § 1325(b)(4). The Trustee asserts the Debtors lack good faith because they have provided no good cause for why they have not done all that is *permitted* under § 1325(b)(4), specifically, propose shorter commitment periods. While the trustee is correct that the Debtors have not provided cause for their plans to extend five years, cause is no longer the test for determining the applicable commitment period, rather, the means test is.[19] With enactment of § 1325(b)(4), Congress decided that the best way

---

[15]   See footnote 12, *supra*.

[16]   *Flygare*, 709 F.2d at 1347-48; *In re Rimgale*, 669 F.2d 426, 431 (7th Cir. 1982); *In re Goeb*, 675 F.2d 1386, 1389 (9th Cir. 1982); *Barnes v. Whelan*, 689 F.2d 193, 198 (D.C. Cir. 1982).

[17]   11 U.S.C. § 1325(b)(4).

[18]   11 U.S.C. § 1325(b)(4)(B) (emphasis added).

[19]   Prior to enactment of BAPCPA, § 1322(d) stated, "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period… ." Under this pre-BAPCPA provision of the Code, the Debtors may well have failed to provide sufficient cause to extend their plans to five years. *See In re Price*, 20 B.R. 253, 255 (Bankr.W.D.Ky. 1981)(holding that insufficient cause existed to extend plan from three to five years where creditors would realize no increase in dividends between three year plan and five year plan and debtor's only reason for proposing five year plan was a "better chance to rehabilitate himself").

to determine whether plans should be three years or five years is debtors' income.  Again, Congress provided courts with a bright line test to determine debtors' applicable commitment periods and left it to the debtors to determine if they would like to exit bankruptcy sooner.  In essence, Congress gave debtors the metaphorical keys to their own cells.

The Court understands that its conclusion may be an unintended consequence of BAPCPA.  As stated in the Act, "The purpose of the bill is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors."  In particular, the "heart of the bill's consumer bankruptcy reforms consists of ... 'means testing,' which is intended to ensure that debtors repay creditors the maximum they can afford."[20]  Thus, while the clear intent of the statute is to maximize a debtor's payments to creditors, the clear language of the statute allows debtors such as McGehan and the Milanos to pay over five years when BAPCPA's predecessor would have required the same repayment in only three years.[21]

## IV.    CONCLUSION

In sum, the Court finds the only fact or allegation which underlies the Trustee's objections is the amount of the Debtors' proposed payments.  The Trustee has advanced no other argument or allegation suggesting bad faith.  Simply put, under either the *Flygare* analysis or the narrow analysis, the amount of the Debtors' payments cannot be the sole and exclusive basis for finding a lack of good faith.  This is not to say that compliance with § 1325(b)(1) serves as a safe harbor against good faith objections.  It does not.  If a debtor complies with § 1325(b)(1), yet, has done so in a way which is based upon misrepresentations or unfair manipulation of the Code, then the permissive language in § 1325(b)(1) will allow the Court to bar confirmation pursuant to the good faith requirement of § 1325(a)(3).[22]

In this case, the Trustee has alleged no misrepresentations or other badge of a lack of good faith, and the Court finds that the Debtors' have not proposed their payments through any

---

[20]    H.R. Rep. 109-31(I), p.2, 2005 U.S.C.C.A.N. 88, 89.

[21]    See footnote 19, *supra.*

[22]    For example, the Court notes the case of *Shaffer v. Heartspring, Inc.*, 415 B.R. 705 (W.D.Wis. 2009), wherein the debtors proposed to commit approximately four times their monthly disposable income to plan payments over a 60 month term.  Although the debtors proposed a plan which complied with § 1325(b)(1)(B), the court denied confirmation for the debtors' lack of good faith because the debtors sought to keep too many of their assets and availed themselves of too many exemptions, which contributed toward the debtors' depressed disposable income calculation.  Here, the Trustee does not allege that the Debtors' disposable income calculations lack good faith.  In addition, the Court can foresee a case where a debtor proposes to pay all unsecured claims in full over a 60 month term, thus complying with § 1325(b)(1)(A); however, the source of the debtor's earnings is uncertain or has historically been unreliable.  The Court may find that such a plan is not proposed in good faith.  Here the Trustee does not allege that the Debtors lack verifiable or reliable sources of income.

8

unacceptable or undue manipulation of the Code.  Rather, the Debtors have proposed their payments exactly as prescribed by Congress and directed by the Code.  As the Tenth Circuit explained in *In re Cranmer*, "When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code… allow[s] him to, … that [calculation] cannot constitute a lack of good faith."[23]  A contrary result would require the Court to "create yet another test to determine the appropriate plan length for debtors who can afford to pay unsecured creditors in full over a term less than the applicable commitment period.  The application of any such test in this case would necessarily result in a judicially created amendment to the provisions of § 1325(b)(1)."[24]

IT IS THEREFORE ORDERED that the Trustee's Objection to Confirmation of John McGehan's Chapter 13 Plan (Docket #13) is DENIED and that John P. McGehan's Chapter 13 Plan (Docket #2) is CONFIRMED.

IT IS FURTHER ORDERED that the Trustee's Objection to Confirmation of Michael and Rashel Milano's Chapter 13 Plan (Docket #12) is DENIED and that Michael and Rashel Milano's Chapter 13 Plan (Docket #7) is CONFIRMED.

Dated this 19th day of July, 2013.

BY THE COURT:

*Sid Brooks*

_____

Sidney B. Brooks,
United States Bankruptcy Judge

---

[23]    *In re Cranmer*, 697 F.3d at 1319.

[24]    *In re Cobb*, 485 B.R. 264, 267 (Bankr.D.R.I. 2013)(*quoting In re Richall*, 470 B.R. 245, 250 (Bankr.N.H. 2012)); *see also In re Thompson*, 116 B.R. 794, 798 (D.Colo. 1990)("[i]f this court were to adopt some percentage test to be used in determining bad faith, it would be a completely arbitrary test not provided for by Congress," especially in light of the enactment of § 1325(b).)(quoting *In re Falquist*, 85 B.R. 566, 567 (Bankr.D.Or. 1988)).